UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK S. WILLIAMS, ET AL.    : | |
|       Plaintiffs,    : | |
|    : | CIVIL ACTION NO. |
| v.    : | 3:10-cv-1553 (CFD) |
|    : | |
| COMMUNITY SOLUTIONS, INC.;    : | |
| ET AL.    : | |
|       Defendants.    : | |

**RULING ON MOTION TO DISMISS**

**I.    Introduction**

The Plaintiffs, Mark Williams, Gerald Doucette, and Juan Villafane, had been convicted and sentenced to imprisonment for various state crimes under Connecticut law. They had been assigned by the Connecticut Department of Corrections ("DOC") to a halfway house known as the Drapelick Center in Bloomfield, Connecticut to serve the last portions of their sentences. The Drapelick Center is owned and operated by a nonprofit corporation, Community Solutions, Inc. ("CSI"). CSI had contracted with the State of Connecticut to operate the Drapelick Center.

The Plaintiffs bring this action against numerous defendants, including CSI; various individual employees of CSI; the DOC; individual officers and employees of the DOC; individual officers and employees of the Connecticut State Department of Public Safety (DPS); and the Town of Bloomfield ("Town" or "Bloomfield"). Plaintiffs allege that they were sexually abused and harassed by staff at the Drapelick Center. Plaintiffs bring claims against the Town for assault and battery, as well as negligent supervision, hiring, and retention; intentional infliction of emotional distress; and negligent infliction of emotional distress under state common law. Those claims against Bloomfield are the subject of this opinion. The Town has filed a motion to dismiss the claims against it, pursuant to Fed. R. Civ. P. Rule 12(c).

## II. Background[1]

In February 2007, the Bloomfield Town Planning and Zoning Commission ("Commission") approved the application of the Drapelick Center to locate in Bloomfield. Following that approval, the Town entered into an agreement with the Center. The agreement with the Town provided for six-month reviews of the Center by the Town. The Drapelick Center is a forty-bed, residential, re-entry work-release program. Following the Drapelick Center's approval by the Town, Sean Ball became its on-site director and Frederick Lester became a staff member under Ball's supervision.

Plaintiff Mark Williams was committed to the custody of the DOC on October 7, 2003 following his sentencing for state criminal convictions. On October 1, 2007, he was designated to the Drapelick Center by DOC. Williams alleges Ball and Lester sexually abused, harassed, and threatened him while he was under Ball and Lester's supervision at the Drapelick Center from October 1 through October 18, 2007. Williams claims he was told by other residents that such conduct was "typical" and that inmates who yielded to Ball's and Lester's sexual demands were given "rewards." Williams further claims that Ball and Lester told Williams that if he did not comply with their demands that they would send him to a harsher DOC facility.

On October 18, 2007, Williams was sent from the Drapelick Center to the Hartford Correctional Center for allegedly being off the premises of the Center without permission. That day he also complained to State of Connecticut Parole Officer Carolynn Lindley about his abuse at the Drapelick Center. Lindley had been assigned to supervise the Drapelick Center inmates.

---

[1] These facts are taken from the allegations of the plaintiff's amended complaint ("Amended Complaint"), dated January 2, 2011, which is the operative complaint. The allegations must be assumed true for the purpose of resolving the motion to dismiss.

Lindley subsequently wrote an incident report that she forwarded to Ball, Terry Borjeson (CSI Area Director), and Sondra Montessi (her Parole Supervisor). The report listed complaints made by Williams to Lindley concerning the abuse and harassment perpetrated by Ball and Lester at the Drapelick Center.

Williams received no immediate response to his complaint, and on November 17, 2008, he handed DOC Deputy Warden Monica Rinaldi an inmate request form stating that he had been sexually harassed by the director and staff at a DOC halfway house.

On November 23, 2007, DOC Commissioner Theresa Lantz directed DOC Security Director Michael Lajoie to commence an investigation of the Drapelick Center. As a result of the investigation, Ball fired Lester on January 24, 2008, due to his "unethical behavior." Borjeson then fired Ball on June 30, 2008 as the result of an "'ongoing investigation into allegations of staff impropriety at the Drapelick Center.'" Following the investigation, Lantz issued her recommendations to ensure future compliance by CSI and supervision of the facility by DOC in March 2009.

Plaintiff Gerald Doucette, Jr., entered the Drapelick Center on November 1, 2007. Doucette alleges that he was groped by Lester on his first day. When Doucette complained about this to Lindley, she allegedly replied that she had heard such complaints about Lester before but discouraged Doucette from pursuing his complaint. However, Doucette filed a DOC grievance. Doucette claims that he told Lindley on December 17, 2007 that he could not stay at the Center because of the sexual abuse. Lindley did not take any action, and when Lester allegedly sexually abused Doucette again on December 21, 2007, Doucette left the Drapelick Center. Doucette was subsequently charged with escape in the first degree for his leaving Drapelick. However,

following an investigation, Lester was arrested for disorderly conduct.

Plaintiff Juan Villafane also complains of similar sexual abuse and harassment by Lester during his time at the Drapelick Center commencing on September 1, 2007. Villafane filed a grievance with Ball on January 16, 2008 concerning Lester's abuse.

In October 2008, the Bloomfield Town Planner announced an end to the six-month reviews of the Drapelick Center and granted the Center permanent use status. The Town also approved an expansion of the Center of eighteen beds. Despite the concerns of town residents about their own safety (in having a halfway house in their neighborhood), the Commission decided that it did not have a compelling reason to stop CSI from operating the Drapelick Center.

The Plaintiffs have filed two separate lawsuits before this Court. On June 30, 2009, Williams filed a complaint and commenced the "2009 action" (No. 3:09-cv-01022). Subsequently, on October 1, 2010, Williams and Doucette filed another complaint, commencing this "2010 action"; Villafane later joined as a Plaintiff. The Town now moves to dismiss all claims against it within the Plaintiffs' Amended Complaint in this, the 2010 action.

### III.    Applicable Law and Discussion

####    A.    Legal Standard

The defendant Town has filed a Motion to Dismiss based on Fed. R. Civ. P. 12(c).[2] Rule 12(c) states that, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A 12(c) motion to dismiss is subject to the same analysis as a 12(b)(6) motion to dismiss. Gibson v. Craigslist, Inc., No. 08-

---

[2] Although denominated as a Motion to Dismiss, the motion is properly described as a Motion for Judgment on the Pleadings, because the Town filed an answer to the Amended Complaint on February 4, 2011.

cv-7735, 2009 WL 1704355, at *2 (E.D.N.Y. July 15, 2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

### B. Jurisdiction over Connecticut Common Law Claims

This Court has original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Thus, if the Court properly has jurisdiction over any of the federal claims, which arise from the same case or controversy as the various state law tort and statutory claims, the Court also has subject matter jurisdiction as these state law claims, which arise from a "common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Plaintiffs raise claims under 42 U.S.C. §§ 1981 and 1983 against several of the other

defendants, claiming that those defendants violated Plaintiffs' rights under the U.S. Constitution. Because this Court has jurisdiction over those claims, it may exercise supplemental jurisdiction over the state law claims against the Town, notwithstanding that there are no federal claims against the Town.  Counts Five, Six, Seven, and Eight are directed against the Town.

### C. Counts Five and Seven: Assault and Battery and Intentional Infliction of Emotional Distress

Plaintiffs argue that Bloomfield is vicariously liable for the alleged assault and battery and resulting intentional infliction of emotional distress committed by Ball and Lester with the alleged assistance of Parole Officer Lindley.  The Town claims that it is protected from liability for these intentional torts by the doctrine of common law municipal immunity.  "[T]he general rule developed in [Connecticut] case law is that a municipality is immune from liability for [its tortious acts] unless the legislature has enacted a statute abrogating that immunity." Spears v. Garcia, 818 A.2d 37, 42 (Conn. 2003).

Conn. Gen. Stat. § 52-557n(a)(1) abrogates the Town's immunity for negligence actions under certain circumstances.  Spears, 818 A.2d at 42.  As Counts Five and Seven allege intentional torts, § 52-557n(a)(1) does not apply.  The Town specifically points to Conn. Gen. Stat. § 52-557n(a)(2)(A), which retains the Town's immunity for criminal or wilful, "i.e., intentional, deliberate, reckless, and malicious, misconduct of its employees" or agents, unless Plaintiffs raise a corresponding abrogating statute.  McKiernan v. Amento, No. CV010453718S, 2003 WL 22333200, at *15 (Conn. Super. Ct. Oct. 2, 2003); see also Sebold v. City of Middletown, No. 3:05-CV-1205, 2007 WL 2782527, at *30 n.27 (D. Conn. Sept. 21, 2007) ("[U]nder Conn. Gen. Stat. § 52-557n(a)(2)(A), a municipality cannot be liable for intentional tortious acts, even where an employee is liable.").  Therefore, even though Plaintiffs allege the

6

questionable assertion that the CSI employees and Lindley were agents of the Town, the Town is immune from Plaintiffs' intentional tort claims in Counts Five and Seven.

In Plaintiffs' Memorandum, they argue that the Town should be held liable for assault and battery because it was negligent in the oversight of CSI, which in turn allowed the allegedly criminal conduct of its employees.  Thus, Plaintiffs argue that § 52-557n(a)(2)(A) does not apply because the Town, through its negligence, is liable for the intentional assault and battery by CSI's employees.  But the applicability of § 52-557n(a)(2)(A) turns on the *employee's* intent, not the *Town's* intent.  See Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (dismissing claims of vicarious liability for assault and battery and intentional infliction of emotional distress against a municipality because § 52-557n(a)(2)(A) exempted the municipality from liability for alleged intentional acts of its employee).  Since the Amended Complaint consistently alleges intentional abuse on the part of Ball and Lester, the Town cannot be held vicariously liable for their intentional torts.[3]  The issue of the Town's alleged negligence in oversight is a separate claim, addressed below.

### D.   Count Six: Negligent Hiring, Retention, and Supervision

#### i.   *As to Plaintiffs Doucette and Villifane*

Plaintiffs also bring claims of negligent hiring, retention, and supervision in Count Six

---

[3] In Connecticut, "an actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." Markey v. Santagelo, 485 A.2d 1305, 1307 (Conn. 1985) (internal quotations omitted).  However, it is well established in Connecticut that "causes of action for negligence and wilful or malicious conduct are separate and distinct causes of action." Warner v. Leslie-Elliot Constructors, Inc., 479 A.2d 231, 237 (Conn. 1984).  Throughout their complaint, Plaintiffs allege wilful and intentional actions by Ball, Lester, and Lindley as forming the basis of their assault and battery and intentional infliction of emotional distress claims against those defendants.

against the Town. The Town first argues that these claims as brought by Doucette and Villifane are time-barred by Conn. Gen. Stat. § 52-584, which requires negligence claims to recover for personal injuries to be brought within two years from the date of the injury. Plaintiffs argue instead that § 52-577, the three-year statute of limitations for tort actions, should apply.

This Court concludes that the two-year limit established in § 52-584 applies to the negligence claims against the Town. All of these claims constitute "injury to the person . . . caused by negligence," and the Connecticut state courts have consistently applied the two-year limit to similar claims. See, e.g., Rivera v. Double A Transp., Inc., 727 A.2d 204, 209 (Conn. 1999) (applying § 52-584 to plaintiff's negligent infliction of emotional distress claim); Ahern v. Kappalumakkel, 903 A.2d 266, 268 n.3 (Conn. App. Ct. 2006) ("Negligent supervision is a negligence action governed by the two year statute of limitations contained within General Statutes § 52-584."). Given that the two-year limit applies, both Doucette's and Villifane's negligence-based claims against the Town in Count Six are time-barred. The Plaintiffs allege that the Town was negligent through June 30, 2008. (Amended Complaint ¶ 236). Doucette asserted his negligence claims against the Town through the original complaint in this action, dated October 1, 2010. Villifane asserted the same claims through the Amended Complaint, dated January 2, 2011. Therefore, both plaintiffs did not file their negligence-based claims in a timely manner, and their negligence claims against the Town in Count Six are dismissed.

   ii.  As to Plaintiff Williams

Williams' negligence claims against the Town are not time-barred because he brought his complaint on June 30, 2009 in Docket Number 3:09-cv-01022. Williams alleges that the Town was negligent in failing to conduct the six-month operational reviews agreed to when the

Commission approved the Drapelick Center.

While Count Six of the Amended Complaint is structured to bring a direct claim of negligence on the part of the Town, Williams' argument seems to be that the Town is liable for negligent acts by its zoning enforcement employees, namely their alleged failure to adequately conduct the six-month reviews. Both theories of the Town's liability fail.

The Town is immune from any direct liability for negligence because Conn. Gen. Stat. § 52-557n(a)(2)(B) provides municipal immunity for discretionary government acts, and the allegations fall within this immunity. For governmental immunity under § 52-557n(a)(2)(B) to apply to a particular act of a Town, that act must have been discretionary rather than ministerial in nature. Evoy v. City of Hartford, No. CIVA397CV2400, 2001 WL 777431, at *2 (D. Conn. 2001). Therefore a plaintiff may sue a town directly for negligent acts conducted through its employees "except when the employees are exercising judgment or discretion." Sapru v. City of New London, No. 530763, 1995 WL 373978, at *2 (Conn. Super. Ct. June 15, 1995) (internal quotations omitted).

The Plaintiffs argue that the Town did not have any discretion in conducting the six-month reviews, that their execution was a "ministerial" duty, which is not protected by immunity. However, the only allegations regarding the reviews were that the Town gave temporary approval of the Center subject to the six-month reviews, and that it ended those reviews when it gave the Drapelick Center permanent status. These decisions, plus the nature of any reviews conducted, require discretion on the part of the Town's officials and cannot be the basis of liability. See Evoy, 2001 WL 777431, at *2 ("Connecticut law provides that a municipality's acts or omissions involving the failure to screen, hire, train, supervise, control, and discipline police officers are

discretionary, governmental acts as a matter of law."); see also Hughes v. City of Hartford, 96 F. Supp. 2d 114, 119 (D. Conn. 2000) ("[E]xtensive and near-unanimous precedent in Connecticut clearly demonstrates that . . . the failure to screen, hire, train, supervise, control and discipline [police]. . . are discretionary acts as a matter of law."); Violano v. Fernandez, 868 A.2d 69, 78 (Conn. App. Ct. 2005) (holding that § 52-557n(a)(2)(B) protects city from a negligence claim for its failure to provide security for plaintiff's personal property located on land that city had condemned, because securing the property was a discretionary act); Duffy v. Town of Wallingford, 862 A.2d 890, 896 (Conn. Super. Ct. 2004) (in the context of § 52-557n(b)(8), city's approval of a subdivision and issuance of a building permit and certificate of occupancy constituted governmental acts involving the exercise of judgment or discretion).

Plaintiffs argue that even if the acts of the Commission were discretionary, liability may still attach to the Town "when the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm." Hughes, 96 F. Supp. 2d at 120 (internal quotations omitted). When relying upon the "identifiable individual to imminent harm" exception to governmental immunity, "the plaintiff must demonstrate that she was an identifiable person *and* was subject to imminent harm *and* that a public officer's conduct subjected her to that harm, despite the apparent likelihood of harm to her." Doe v. Peterson, 903 A.2d 191, 200 (Conn. 2006). The Town's temporary zoning approval in February 2007 precludes an identification of Williams, Doucette, or Villafane as victims because none of them were admitted until September 2007 at the earliest. Furthermore, zoning approval did not subject the plaintiffs to an imminent harm, as the harm occurred six to eleven months after the approval

was granted.[4] Even if the Town failed to conduct its six-month reviews, the Plaintiffs do not allege that the Town had any information during the time period in question that the Plaintiffs were subject to imminent harm by the Drapelick Center employees. Therefore, the "identifiable individual to imminent harm" exception to the Town's immunity does not apply in this case.

Plaintiffs have not provided this Court with the details of the arrangement between the Town and CSI. But even without those details, Williams' negligence claims fail because Williams has not successfully pled that the Town owed any duty to him from which the Town's negligence would stem. A duty to prevent injury to a third person arises only in limited circumstances, including when a special relationship of custody exists between the defendant and the injured party or when a special relationship of control exists between the defendant and the person committing the injury. 2 Restatement (Second) of Torts § 320 (2011); see Fraser v. United States, 674 A.2d 811, 815 (Conn. 1996).

Williams does not allege that he was ever in custody of the Town or that the Town committed an "affirmative act of restraining [his] freedom" to bring about a duty to protect him. Tustin v. Jayaraj, No. 3:08-cv-1034, 2009 WL 1538153, at *3 (D. Conn. 2009) (quoting Matican v. City of New York, 524 F.3d 151, 156 (2d Cir. 2008)). Rather, Williams argues that the Town owed a duty to him as a *resident* of the Town (see Plaintiffs' Memorandum, page 9) to conduct the stated reviews. The Amended Complaint also does not set forth any facts indicating that the Town had any control over the Drapelick Center staff, from which a duty would arise; rather, the

---

[4] There was also no threat of imminent harm at the time of the Commission's approval of expansion of the Drapelick Center in October 2008 because both Ball and Lester were no longer working at the Center.

Amended Complaint makes clear that Ball and Lester were employed by CSI, which had a contractual relationship with the DOC, and that Lindley was employed by the DOC. (Amended Complaint, ¶¶ 12-14). Indeed, Ball and Lester were eventually terminated by CSI, not the Town, for their misconduct. Therefore, Williams does not successfully allege a basis for a special relationship between him and the Town imposing a duty on the Town to prevent the harm allegedly done to him by the Drapelick Center staff.

Although Williams does not explicitly argue that the Town is liable for the acts of its zoning employees through the municipal indemnity statute and does not name any individual employee of the Town as a defendant, any such claim fails as well. Municipal liability through Conn. Gen. Stat. § 7-465 "is predicated on . . . individual negligence on the part of the employee and the municipality's employment relationship with that individual." Wu v. Town of Fairfield, 528 A.2d 364, 438 (Conn. 1987); see Evoy, 2001 WL 777431, at *3 n.3 (dismissing a claim under § 7-465 because the plaintiff had failed to name an agent, officer, or employee of the municipality as a defendant). Conn. Gen. Stat. § 52-557n(b)(7) retains immunity for a municipal employee for "the issuance, denial, suspension or revocation of . . . any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law . . . ." Connecticut courts have held actions by zoning officers to be discretionary acts, and therefore those officers are immune to liability. See, e.g., Negro v. Hirsch, No. CV03833003S, 2005 WL 895803, at *2 (Conn. Super. Ct. Mar. 9, 2005); Bonington v. Town of Westport, No. FSTCV085008124, 2009 WL 2781842, at *2 (Conn. Super. Ct. July 27, 2009), aff'd, Bonington v. Town of Westport, 999 A.2d 700 (Conn. 2010) ("[T]he enforcement of zoning regulations is a quintessential discretionary government function."

(internal quotations omitted)); see also Evon v. Andrews, 559 A.2d 1131, 1134 (Conn. 1989) (in the home inspection context, "what constitutes a reasonable, proper or adequate inspection involves the exercise of judgment").

As discussed above, the alleged acts or failures to act by the Commission or its employees are discretionary and cannot be the basis for liability. Without successfully alleging negligence on the part of a Town employee, Williams cannot successfully allege that the Town is liable because of its statutory duty to indemnify its employees. For all of these reasons, the negligence claims in Count Six of the Amended Complaint are dismissed.

### E.   Count Eight: Negligent Infliction of Emotional Distress

The Plaintiffs' claim of negligent infliction of emotional distress against the Town is based on vicarious liability for the acts of Ball, Lester, Lindley, and Lantz. However, there is no relationship between the Town and the employees of CSI or DOC upon which vicarious liability can be based.[5] "Under the doctrine of *respondeat superior*, a master is liable for the willful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business." Glucksman v. Walters, 659 A.2d 1217, 1219 (Conn. App. Ct. 1995) (internal quotations omitted); see also Levitz v. Jewish Home for the Aged, Inc., 239 A.2d 490, 492 (Conn. 1968) ("'In the course of his employment' means while engaged in the service of the master . . . ."). The Plaintiffs claim that an agency relationship existed between the Town and CSI. An agency relationship is "the fiduciary relationship which results from the manifestation

---

[5] This claim is not time-barred as to any of the Plaintiffs because Lantz's March 2009 report, which is allegedly one source of the distress, occurred less than two years before any of the Plaintiffs filed their complaints.

of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Beckenstein v. Potter & Carrier, Inc., 464 A.2d 6, 13 (Conn. 1983) (internal quotations omitted).

Plaintiffs have not sufficiently alleged that Ball, Lester, Lindley, or Lantz were employed by the Town or were agents of the Town. The Town itself has no relationship to the Drapelick Center other than in the context of providing limited zoning approval. The Amended Complaint also makes no allegations that CSI or its employees were fulfilling a role that the Town would otherwise fill, thereby possibly creating an agency relationship. Plaintiffs argue that the Town "abdicated its duty to CSI" to "ensure that all procedures and concerns of the Drapelick Center were adequately monitored and addressed," but Plaintiffs do not allege that the Town had such a role in the first place, and this Court concluded above that the Town had no duty to supervise the facility. Therefore, Plaintiffs have not adequately alleged that the Town had any form of agency relationship with Ball, Lester, or Lindley, and their claim of vicarious liability for negligent infliction of emotional distress is dismissed.[6]

## IV.  Conclusion

In summary, and for the reasons set forth above, the Town's motion to dismiss [Dkt. # 19] is GRANTED.

SO ORDERED  this 30th day of September 2011, at Hartford, Connecticut.

---

[6] Also, without an agency relationship between the Town and the CSI and DOC employees, the Town cannot be required to indemnify those actors under Conn. Gen. Stat. § 7-465.  Evoy, 2001 WL 777431, at *3 n.3.

    /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**